855 F.2d 368
 1988-2 Trade Cases 68,132, 1988 Copr.L.Dec. P 26,299,
7 U.S.P.Q.2d 1475
 A & M RECORDS, INC.; Arista Records, Inc.; Atlantic
Recording Corporation; Capitol Records, Inc.; CBS Records,
Inc.; Chrysalis Records, Inc.; Elektra/Asylum/Nonesuch
Records, a division of Warner Communications, Inc.; MCA
Records, Inc.; Polygram Records, Inc.; RCA/Ariola
International; and Warner Bros. Records, Inc., Plaintiffs-Appellees,
v.
A.L.W., LTD., and Samuel Henly, Defendants-Appellants.
 No. 87-3091.
 United States Court of Appeals,
Seventh Circuit.
 July 1, 1988.
Substitution of Party Granted July 6, 1988.
 
 Mark A. Eisenberg, Madison, Wis., for defendants-appellants.
 Michael B. Apfeld, Godfrey & Kahn, S.C., Milwaukee, Wis., for plaintiffs-appellees.
 Before CUMMINGS, FLAUM and RIPPLE, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Appellees record companies brought a copyright infringement action against appellants, charging that they rented copyrighted phonorecords without permission in violation of 17 U.S.C. Sec. 109(b)(1),[1] the "Record Rental Amendment." Appellants counterclaimed that the record companies violated the antitrust laws by lobbying for the Amendment and by conspiring to deny appellants licenses to rent copyrighted phonorecords. The district court dismissed the counterclaims and entered summary judgment for the record companies. We affirm.
 
 I.
 
 2
 Congress passed the Record Rental Amendment in 1984 as a narrow exception to the "first sale doctrine," which limits a copyright owner's exclusive right to distribute his copyrighted material to his first sale of that material. In 1984, Congress decided that the recent but growing phenomenon of commercial record rentals threatened the entire record industry. Such rentals were invariably intended to facilitate the unauthorized home taping of the rented phonorecords, which the first sale doctrine was never intended to allow. See H.R.Rep. No. 98-987, 98th Cong., 2d Sess. (1984), U.S. Code Cong. & Admin. News 1984 p. 2898; S.Rep. No. 98-162, 98th Cong., 1st Sess. (1983); Nimmer on Copyright Sec. 8.12[B]. The Amendment (which does not apply to phonorecords possessed before October 4, 1984) thus made it unlawful to rent phonorecords without the permission of the copyright holder.
 
 
 3
 Henly and ALW (collectively "ALW") have operated several "Rent-A-Record" stores in Wisconsin since 1982.[2] Rent-A-Record rented Billboard Top 100 records for two dollars plus a five dollar deposit. After the passage of the Amendment, Henly's attorney wrote to the appellees seeking licenses to rent copyrighted records. Each of the record companies responded that they did not intend to license their records for rental.[3] ALW nonetheless continued to rent copyrighted materials without permission. In August of 1986, an investigator for the Recording Industry Association of America visited the Milwaukee Rent-A-Record and rented eleven recently issued discs, each copyrighted by one of the eleven appellee record companies. The record companies subsequently wrote letters to the appellants demanding that they cease and desist from the unlicensed renting of copyrighted phonorecords. Rent-A-Record, however, continued its business as before. The record companies filed a copyright infringement suit in federal district court, attaching the investigator's affidavit.
 
 
 4
 ALW offered three affirmative defenses which were properly rejected by the district court.[4] It also interposed two counterclaims, arguing that the record companies violated the Clayton and Sherman Acts by lobbying and testifying before Congress and refusing to grant licenses to rent copyrighted materials following passage of the Amendment. The counterclaims contended that the record companies' copyright infringement lawsuit was evidence of their conspiracy to drive ALW out of business. On February 24, 1987, the district court dismissed these counterclaims as unsupported by law and without merit. The record indicates, and counsel confirmed at oral argument, that no discovery took place during the spring and summer of 1987.
 
 
 5
 The record companies filed a second amended complaint on August 11, 1987; ALW answered August 28, reasserting the identical counterclaims. On September 21, 1987, the record companies moved for summary judgment, specifically seeking the dismissal with prejudice of ALW's counterclaims. ALW responded with a request for a jury trial, claiming that they possessed the eleven records at issue before October 4, 1984. The record companies provided affidavits which indicated that these discs were not available for distribution until after that date. Henly also denied in an affidavit that the investigator ever rented the eleven discs on the specified dates. The district court properly considered this conclusory, unsupported denial inadequate to defeat a motion for summary judgment. First Commodity Traders Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1011 (7th Cir.1985).
 
 
 6
 Section 109(b) only requires that plaintiffs own the relevant copyright and that defendants have rented records that came into their possession after October 4, 1984 without consent of the plaintiffs. The district court accordingly granted summary judgment on all issues in favor of the record companies on November 19, 1987, less than two weeks before the case was set for trial. It awarded plaintiffs $500 for each of the eleven infringements, costs and attorney's fees of $36,306.78,[5] and a permanent injunction forbidding defendants to rent any records obtained after October 4, 1984.[6]
 
 II.
 
 7
 ALW contends on appeal that its counterclaims were improperly dismissed, because it would have been able to show that the record companies conspired to deny it rental licenses after passage of the Record Rental Amendment. To the extent that ALW's counterclaims alleged that the companies violated the antitrust laws by lobbying and testifying before Congress in an effort to ensure passage of the Amendment, they failed to state a claim upon which relief could be granted. Such activities are at the core of the doctrine set forth in Eastern Railroad President's Conference v. Noerr Motor Freight, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) which shields from antitrust liability efforts to influence public officials and attempts to affect the passage or enforcement of legislation.
 
 
 8
 Appellants also contend, however, that the district court effectively ignored their additional argument that the record companies illegally conspired to deny ALW licenses to rent their records after the passage of the Amendment. In other words, appellants insist that they raised sufficient issues of conspiracy and monopolization unprotected by Noerr and Pennington that their counterclaims should not have been dismissed for the second time in the court's summary judgment ruling.[7]
 
 
 9
 In first dismissing the counterclaims, the district court held that appellants failed to present any authority for their claim that the exercise of the property interest granted to the record companies by the copyright laws violated the antitrust laws.[8] On summary judgment, the court again ruled against the identical antitrust counterclaims. ALW made vague allegations of conspiracy; it did not charge misuse of copyright. The only facts alleged to support its allegations were the letters from the various record companies declining to grant licenses to Henly, and the companies' filing of the copyright infringement suit. Between the August 28 reassertion of the counterclaims and the November grant of summary judgment in favor of appellees, ALW apparently conducted no discovery and made no motions to compel discovery. They never even requested a continuance for the purpose of conducting discovery to substantiate their antitrust counterclaims.
 
 
 10
 We have held that summary disposition of antitrust claims is encouraged when permissible. Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 475 (7th Cir.1988). The record companies possessed a statutory grant of authority to withhold permission to rent their copyrighted records. Appellants nonetheless attempted to allege an illegal conspiracy to enforce these rights in restraint of trade. ALW, however, failed to adduce any evidence giving rise to an inference of conspiracy in light of the more plausible inference that each record company independently found it economically desirable to decline to grant rental licenses. See Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 764, 104 S.Ct. 1464, 1470-71, 79 L.Ed.2d 775 (1984). No record company had an incentive to facilitate the unauthorized copying of its materials. As an MCA official wrote in response to ALW's license request, a record company would consider "record rentals ... highly detrimental to the recording industry and vigorously pursue all [its] legal rights whenever [its] records are rented without [its] express written permission." Further, no record company would have an incentive to insure that its rivals do not harm themselves by allowing rental, and thereby illegal copying, of their records. Once all phonorecord copyright holders were granted the statutory right not to issue rental licenses, there was no need to collude to ensure that no licenses issued. The "absence of any plausible motive to engage in the conduct charged is highly relevant to whether a 'genuine issue for trial' exists." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 596, 106 S.Ct. 1348, 1361, 89 L.Ed.2d 538 (1986).
 
 
 11
 Having succeeded in gaining copyright protection, each record company could only be expected to exercise and enforce that right. Despite ample opportunity, ALW never sought discovery to enable it to amend its counterclaims to create a genuine issue for trial. ALW produced only bare and implausible allegations of conspiracy with no facts to support them. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,' " and summary judgment is appropriate. Id. at 587, 106 S.Ct. at 1356-57.
 
 
 12
 The counterclaims were thus insufficient to survive a motion for summary judgment, and the decision of the district court is AFFIRMED.
 
 
 
 [1]
 17 U.S.C. Sec. 109(b) provides in part:
 (1) Notwithstanding the provisions of subsection (a) [the "first sale doctrine"], unless authorized by the owners of copyright in the sound recording and in the musical works embodied therein, the owner of a particular phonorecord may not, for purposes of direct or indirect commercial advantage, dispose of, or authorize the disposal of, the possession of that phonorecord by rental, lease, or lending, or by any other act or practice in the nature of rental, lease, or lending. Nothing in the preceding sentence shall apply to the rental, lease, or lending of a phonorecord for nonprofit purposes by a nonprofit library or nonprofit educational institution.
 (2) Nothing in this subsection shall affect any provision of the antitrust laws. For purposes of the preceding sentence, "antitrust laws" has the meaning given that term in the first section of the Clayton Act and includes section 5 of the Federal Trade Commission Act to the extent that section relates to unfair methods of competition.
 17 U.S.C. Sec. 101 defines phonorecords as:
 material objects in which sounds, other than those accompanying a motion picture or other audiovisual work, are fixed by any method now known or later developed, and from which the sounds can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "phonorecords" includes the material object in which the sounds are first fixed.
 
 
 [2]
 ALW apparently has no bank account, bookkeeper or accountant. It has never filed federal or Wisconsin tax returns. Henly described it as a "cash only" operation. Its employees, he asserted, are family members who work for spiritual gratification only. ALW failed to present to the district court any documentation of its financial operations
 
 
 [3]
 In contrast to appellants' assertions, the record companies' responses were not uniform in style or content. They were similar only in the sense that no record company, having won from Congress the right to withhold permission to rent its records, chose to give such permission
 
 
 [4]
 Appellants first contended that they acted in good faith in renting phonorecords, despite the evidence of their correspondence with the record companies which clearly denied them licenses to rent. ALW next asserted that the Record Rental Amendment itself violates the antitrust laws, which seems tantamount to a contention that all of copyright law may be "illegal" or that Congress is forbidden to modify and create exceptions to its own enactments. Finally, appellants contended, in total disregard of 17 U.S.C. Sec. 101, that because they rented compact discs and cassettes, not records, their activities did not fall within the prohibition of the Amendment. Appellants wisely did not oppose the record companies' motion to strike their first and third affirmative defenses; the court dismissed the second. In this appeal, ALW contests only the dismissal of its antitrust counterclaims
 
 
 [5]
 17 U.S.C. Sec. 505 provides that the court may, in its discretion, award reasonable attorneys' fees and costs against a copyright infringer
 
 
 [6]
 On January 5 and April 12, 1988, employees of appellees' law firm rented recently released records from Rent-A-Record. The record companies submitted affidavits to the district court and moved that the district court hold ALW in contempt for violating the court's permanent injunction. Appellants contended that they no longer rent records, but merely sell them pursuant to a buy-back provision: customers, defendants contended, may buy a record for two dollars plus a five dollar deposit, which will be returned at the customer's choice within a specified time limit. See H.R.Rep. No. 98-987, 98th Cong., 2d Sess. 4 (1984), U.S.Code Cong. & Admin.News 1984, p. 2901 and S.Rep. No. 98-162, 98th Cong., 1st Sess. 6 (1983) (specifically contemplating that rentals disguised as buy-back plans would be prohibited by the language of the Amendment). The district court held ALW in contempt, A & M Records, Inc. v. A.L.W., No. 86-C-0985 (E.D.Wis. May 2, 1988), and ordered them to conduct an inventory, separate out all records not in their possession before October 4, 1984, and clearly label these records as being for sale only
 
 
 [7]
 Defendants' counterclaims alleged in part:
 
 
 [8]
 Upon the enactment of the amendment, the counterclaim plaintiffs attempted to obtain licenses from the counterclaim defendants. Every counterclaim defendant informed counterclaim plaintiffs that the counterclaim defendants were not in the practice of granting licenses for the rental, lease or lending of its copyrighted works. The effect of this legislation, as well as the counterclaim defendants' response, is to drive counterclaim plaintiffs out of business
 
 
 [9]
 As further evidence of the conspiracy to drive counterclaim plaintiffs out of business, the counterclaim defendants, acting in concert, have filed the above-stated cause of action in Case No. 86-C-0985
 
 
 [10]
 As a result of the counterclaim defendants combining and conspiring together to drive counterclaim plaintiffs out of business, there has been a substantial impact on interstate commerce resulting from the loss of business by counterclaim plaintiffs, and the counterclaim plaintiffs have been substantially damaged thereby in business and property within the meaning of the antitrust laws of the United States
 * * *
 
 
 [18]
 On or about September 7, 1986, the counterclaim defendants instituted suit against counterclaim plaintiff A.L.W., Ltd., in the United States District Court for the Eastern District of Wisconsin as part of the attempt of counterclaim defendants to harass counterclaim plaintiff A.L.W., Ltd., as well as to attain counterclaim defendants' objectives of monopolizing the right to rent, lease or lend phonorecords
 
 
 [19]
 Counterclaim defendants are seeking to drive counterclaim plaintiffs and others similarly situated out of business so that counterclaim defendants will be a monopoly position in the entire 50 states of the United States as far as the renting, leasing or lending of phonorecords
 
 
 [20]
 The effect of the above described acts and practices of counterclaim defendants is likely to be a substantial lessening of competition or the creation of a monopoly in the renting, leasing and lending of phonorecords in the area in which counterclaim plainiffs do business
 
 
 [8]
 We are assuming arguendo the plausibility of ALW's legal theory that the record companies could be liable under the antitrust laws in this case for conspiracy to enforce a statutory right designed to protect their exclusive copyrights. We hold that defendants failed to present sufficient evidence of such a conspiracy to survive summary judgment and therefore express no opinion on the underlying legal theory. We note, however, that the Amendment specifically provides that it does not affect any provision of the antitrust laws. The legislative history states that:
 The Committee has carefully considered the implications of the proposed legislation with respect to antitrust policy in general. Nothing in this bill is intended to be either an express or implied repeal of our Federal antitrust laws. As already noted, the bill does not interfere with a retailer's freedom under existing law to sell the records they purchase or to set their selling price; it represents only a narrowly crafted solution to the particular problem identified in this report. Moreover, the bill does not create any new antitrust exemption, and it does not weaken the general rules governing vertical restraints on distribution. The proposed bill would not enable copyright owners to engage in conduct that is currently unlawful under the antitrust laws. Accordingly, the Committee has concluded that the passage of S. 32 is wholly consistent with the principles that underlie the antitrust laws.
 S.Rep. 98-162, 98th Cong., 1st Sess. 5 (1983).